UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HENRY F. HEWES,

                              Plaintiff,

                  -v.-

DEMOCRATIC NATIONAL COMMITTEE,
DEBBIE WASSERMAN SCHULTZ,
DONNA BRAZILE, and ROBBY MOOK,

                              Defendants.

---

19 Civ. 7784 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Henry Hewes, proceeding *pro se*, brings this suit against the Democratic National Committee (the "DNC"), as well as Debbie Wasserman Schultz, Donna Brazile, and Robby Mook (the "Individual Defendants," and together with the DNC, "Defendants"), alleging that Defendants conspired to deprive him of various support and services to which Plaintiff alleges he was entitled, with the ultimate goal of depriving Plaintiff of his ability to seek the Democratic Party's (the "Party") nomination for President of the United States in 2016.  Before the Court now is Defendants' unopposed motion to dismiss Plaintiff's Second Amended Complaint (the "SAC") for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth in the remainder of this Opinion, the Court grants Defendants' unopposed motion to dismiss.

**BACKGROUND**[1]

A.      **Factual Background**

Plaintiff is a resident of New York and a registered member of the
Democratic Party.  (SAC ¶¶ 1, 8).  Plaintiff alleges that the DNC "functions as
the leadership and administrative body of the Democratic Party[.]"  (*Id.* at ¶ 2).
Plaintiff also alleges that in 2016 Wasserman Schultz was the chair of the DNC,
Brazile was the interim DNC chair, and Mook was the campaign manager for
Hillary Clinton's presidential campaign.  (*Id.* at ¶¶ 4-6).

Plaintiff was a candidate for the Party's nomination for President of the
United States for the 2016 election and registered as such with the Federal
Election Commission.  (SAC ¶¶ 9-10).  Plaintiff appeared on the ballot in the
Party's presidential primaries in at least six states.  (*Id.* at ¶ 11).  Plaintiff
alleges that he "actively campaigned by placing television advertisements,
appearing in debates, [conducting] press interviews, [and] maintain[ing] a
campaign office and social media presence[.]" (*Id.* at ¶ 12).  Plaintiff further
alleges that he "made numerous efforts to contact the DNC to participate in
debates, share data[,] and appear in the primary for Democrats abroad[.]"  (*Id.*
at ¶ 13).

Plaintiff alleges that he was "induce[d] ... to expend time and money
seeking a nomination based on the belief that the DNC would be neutral and

---

[1]      This Opinion draws its facts from Plaintiff's Second Amended Complaint ("SAC" (Dkt.
#46)), the well-pleaded allegations of which are taken as true for purposes of this
motion.  The transcript of the January 31, 2020 conference is referred to as "Hr'g Tr."
(Dkt. #44).  For convenience, the Court refers to Defendant's Memorandum of Law in
Support of Its Motion to Dismiss as "Def. Br."  (Dkt. #53).

would treat all candidates [for the Party's nomination for President] equally[.]" (SAC ¶ 19).  Plaintiff claims that the DNC "declared publicly" and "promised to" "remain neutral" and that therefore it was "obligated to remain neutral and to provide Plaintiff with the same support accorded to all other candidates," presumably for the duration of the 2016 election cycle, although Plaintiff did not specify.  (*Id.* at ¶ 21).  Nevertheless, Plaintiff alleges that the DNC did no such thing, and instead: (i) "systematically denied Democratic Party resources to Plaintiff"; (ii) "refused to ... return calls ... or to answer written communications from Plaintiff"; (iii) "organized a primary for Americans [a]broad and refused to include Plaintiff"; (iv) "restricted [Plaintiff's] access to its dat[a] resources"; and (v) excluded Plaintiff from participating in debates organized for candidates.  (*Id.* at ¶¶ 22-26).

Plaintiff contends that these actions were "intended to" and "ha[d] the effect of depriving [P]laintiff of his right ... [to] participate in primary elections" and, further, that Defendants engaged in a "conspiracy" that "was designed to interfere with and deprive [P]laintiff of his basic civil right to participate in the election[.]"  (SAC ¶ 20).  Plaintiff alleges that the DNC's purported misconduct was caused by or somehow related to an "illicit and secret deal" between the DNC and Hillary Clinton, whereby Clinton paid the DNC for preferential treatment to "[e]nsure her nomination and to deny other candidates a fair opportunity to contest the primaries."  (*Id.* at ¶ 15; *see also id.* at ¶¶ 16-17).  As a result, Plaintiff seeks actual and punitive damages, as well as injunctive relief in the form of: (i) an injunction against Defendants to prevent them "from

engaging in future conduct in furtherance of ... conspiracy and illicit deals[,]"
and (ii) the appointment of a trustee to "oversee the activities of the [DNC]
during the 2020 election cycle[.]" (*Id.* at p. 4).

## B.    Procedural Background

Plaintiff initiated this suit on August 20, 2019, by filing his original
complaint. (Dkt. #2). In response to a pending motion to dismiss, Plaintiff filed
an amended complaint on November 5, 2019. (Dkt. #23). Shortly thereafter,
Defendants sought leave to file renewed motions to dismiss for lack of subject
matter jurisdiction and failure to state a claim. (Dkt. #34-35). At a pre-motion
conference on January 31, 2020, the Court discussed with Plaintiff his legal
claims and his purported basis for asserting federal jurisdiction. (*See generally*
Hr'g Tr.). Plaintiff indicated he was invoking the Court's diversity jurisdiction,
and the parties discussed whether Plaintiff would voluntarily dismiss Hillary
Clinton as a defendant in order to preserve complete diversity. (*Id.* at 5:10-
7:15, 21:24-22:11). On the record on January 31, 2020, the Court ordered
Plaintiff to file a Second Amended Complaint on or before February 28, 2020,
as well as a letter addressing the issue of whether diversity of parties would
exist if Hillary Clinton remained a defendant. (*See id.* at 22:19-24:8).

On February 19, 2020, Plaintiff filed the SAC, in which Defendant Hillary
Clinton was not named in the case caption but was listed as a party in the text
of the document. (*See generally* SAC; *see also id.* at ¶ 3). On February 20,
2020, the Court ordered Plaintiff to file a letter on or before March 6, 2020,
making clear whether he intended to proceed with or without Hillary Clinton as

a named defendant.  (Dkt. #48).  On March 17, 2020, the Court *sua sponte* extended Plaintiff's deadline to file a letter regarding whether he intended to dismiss Clinton from the litigation.  (Dkt. #49).  On April 3, 2020, after receiving no such letter from Plaintiff, the Court issued an Order dismissing Clinton from the case for failure to prosecute, and setting a briefing schedule for Defendants' anticipated motion to dismiss.  (Dkt. #50).

On May 1, 2020, Defendants filed their motion to dismiss and supporting papers.  (Dkt. #51-53).  On July 20, 2020, the Court *sua sponte* extended Plaintiff's time to oppose the motion to dismiss to August 7, 2020, and warned him that failure to oppose the motion by that date would result in the Court considering the motion unopposed.  (Dkt. #54).  To date, Plaintiff has not filed an opposition to the motion to dismiss, and indeed Plaintiff has not corresponded with the Court since filing the SAC more than one year ago.

## DISCUSSION

**A.    Plaintiff Has Standing to Pursue Certain Claims Alleged in the SAC**

### 1.    Applicable Law

"When presented with a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter jurisdiction necessary to consider the merits of the action."  *Wong* v. *CKX, Inc.*, 890 F. Supp. 2d 411, 414-15 (S.D.N.Y. 2012).  It does so here.

"'[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it.'" *Pulse Creations, Inc.* v. *Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 52-53 (S.D.N.Y. 2015) (alteration in *Pulse Creations*) (quoting *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "In resolving a Rule 12(b)(1) motion to dismiss, '[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it.'" *Martinez* v. *Riverbay Corp.*, No. 16 Civ. 547 (KPF), 2016 WL 5818594, at *3 (S.D.N.Y. Oct. 4, 2016) (alterations in *Martinez*) (quoting *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). Thus, Plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists.'" *Pulse Creations*, 154 F. Supp. 3d at 53 (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Because Plaintiff is proceeding *pro se*, the Court "'must construe [his] pleadings broadly, and interpret them to raise the strongest arguments that they suggest.'" *Azzawi* v. *Int'l Ctr. for Dispute Resolution*, No. 16 Civ. 548 (KPF), 2016 WL 6775437, at *3 (S.D.N.Y. Nov. 14, 2016) (quoting *Kingsley v. N.Y.C. Hous. Auth.*, No. 16 Civ. 169 (KPF), 2016 WL 5939359, at *3 (S.D.N.Y. Oct. 6, 2016)); *see also Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). But that liberal construction has limits, and the Court will not suspend "'all normal rules of pleading'" for Plaintiff's benefit. *Hill* v. *City of New York*, No. 13 Civ.

8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (quoting *Stinson* v. *Sheriff's Dep't of Sullivan Cnty.*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980)).

### 2. Analysis

Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const., art. III, § 2, cl. 1.  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 156 (2014) (alteration in original) (quoting *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements."  *Spokeo, Inc.* v. *Robins*, 578 U.S. —, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560).  "The plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision."  *Id.*  Where, as here, a plaintiff seeks injunctive relief, he "must also prove that the identified injury in fact presents a 'real and immediate threat of future injury' often termed a 'likelihood of future harm.'"  *Bernstein* v. *City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain* v. *Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

Defendants argue that the Court lacks jurisdiction over this suit because Plaintiff lacks standing.  (Def. Br. 7-9).  Specifically, Defendants argue that Plaintiff cannot "prove that he suffered a concrete and particularized injury" because he was able to, and in fact did, participate in the Party's 2016

presidential primary process.  (*Id.* at 7).  Defendants further contend that to the extent Plaintiff's campaign was unsuccessful, it was due to Plaintiff's own conduct, and that failing to secure the Party's nomination for President is not a cognizable injury in fact.  (*Id.* at 7-8).  Finally, Defendants argue that the relief Plaintiff seeks — money damages, an injunction against the DNC to prohibit it from making future "deals" with presidential candidates, and the appointment of a trustee to oversee the DNC during the 2020 election — will not redress Plaintiff's purported injuries.  (*Id.* at 9).  While the Court concurs that Plaintiff would lack standing to pursue a claim if the only injury alleged were failure to secure the Democratic Party's 2016 nomination for President, "constru[ing] [Plaintiff's] pleadings broadly" and "interpret[ing] them to raise the strongest arguments that they suggest[,]" *Cruz*, 202 F.3d at 597, the Court discerns that Plaintiff has alleged injuries that are more concrete and cognizable than just the denial of the nomination.

*First*, the Court disagrees with Defendants that the only injury Plaintiff asserts is his failure to secure the Party's 2016 presidential nomination. Rather, Plaintiff alleges that he "plac[ed] television advertisements, appear[ed] in debates, did press interviews, [and] maintained a campaign office and social media presence" (SAC ¶ 12), thus "expend[ing] time and money seeking [the] nomination" (*id.* at ¶ 19).  These activities cost Plaintiff money, the loss of which is a concrete injury sufficient to establish standing.  *See Hughes* v. *Ester C Co.*, 930 F. Supp. 2d 439, 453 (E.D.N.Y. 2013) ("Economic injury suffices as a form of injury-in-fact that meets the first element of standing." (citing *Watt* v.

*Energy Action Educ. Found.*, 454 U.S. 151, 161 (1981)).  Plaintiff seeks $100,000 in compensatory damages, presumably representing the value of the time and money he put into this campaign.  (*See generally* SAC).  Thus, Plaintiff has established a concrete injury in fact.

*Second*, Defendants argue that Plaintiff's injury is not fairly traceable to their conduct.  In so doing, Defendants recast Plaintiff's injury as premised on the idea that Plaintiff would not have run for the Party's nomination unless he was assured of winning the nomination.  (*See* Def. Br. 7-8).  However, interpreting the SAC to raise the strongest arguments it suggests and accepting its well-pleaded allegations as true, the Court discerns that Plaintiff alleges that he relied on the DNC's promise of neutrality and would not have run had he known that the DNC would unfairly and systematically undermine his campaign, for example, by refusing him access to support it provided to other candidates.  (*See, e.g.*, SAC ¶ 22).  Properly framed, Plaintiff's injury — time and money expended in pursuing his campaign — *is* fairly traceable to concrete conduct Plaintiff alleges in the SAC, *i.e.*, Defendants purportedly treated Plaintiff unfairly by: (i) "systematically den[ying] Democratic Party resources to Plaintiff"; (ii) "refus[ing] to ... return calls ... or to answer written communications from Plaintiff"; (iii) organiz[ing] a primary for Americans [a]broad and refus[ing] to include Plaintiff"; (iv) "restrict[ing] [Plaintiff's] access to its dat[a] resources"; and (v) excluding Plaintiff from participating in debates organized for candidates.  (*Id.* at ¶¶ 22-26).  While Plaintiff may not be able to establish a legal right to the support and services he desired from the Party,

that is an issue to address on the merits of Plaintiff's claim, and does not bar him from having his day in Court.[2]

*Third*, Defendants argue that the relief Plaintiff seeks will not redress his asserted injuries, but for essentially the same reasons articulated above, the Court disagrees.  Again, Defendants advance an unduly narrow reading of the SAC.  While the Court agrees that the relief sought will not cause Plaintiff to win the 2016 nomination, the Court does not discern Plaintiff's primary injury to be his failure to secure the nomination.  As noted above, the Court understands Plaintiff to allege that he relied on the DNC's promise of neutrality and would not have run had he known of Defendants' purportedly systematic denial of support for disfavored candidates.  As such, money damages will redress Plaintiff's injury insofar as his grievance is time and money lost due to Defendants' purported misconduct.

However, Plaintiff fails to establish standing to pursue the injunctive relief sought.  "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that []he is likely to be harmed again in the future in a similar way." *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *DeShawn E. ex rel. Charlotte E.* v. *Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998)).  Here, Plaintiff does not allege that he is likely to be harmed again in a similar way, and accordingly, he has no standing to seek either (i) the

---

[2]     For these same reasons, the Court concludes that Defendants' argument that Plaintiff's own conduct caused him to lose the Party's presidential nomination in 2016 (*see* Def. Br. 8), is immaterial to Plaintiff's standing to bring this case.

appointment of a trustee to oversee the activities of the DNC, or (ii) an injunction prohibiting Defendants from engaging in future misconduct.  (*See generally* SAC).  Additionally, the Court notes that as Plaintiff requests that the Court appoint a trustee to oversee the DNC's activities "during the 2020 election cycle to insure that all candidates are treated equally."  The 2020 election cycle has come and gone.  Therefore, Plaintiff's request for any such relief is moot.  See *Doyle* v. *Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, '[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" (quoting *Fox* v. *Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994))).

In sum, the Court finds that Plaintiff has sufficiently established standing to pursue his claim for money damages arising out of his allegations that he relied on the DNC's promise of neutrality, and thereafter that Defendants harmed him by engaging in a concrete and particularized campaign of purportedly unfair mistreatment, causing Plaintiff to expend time and money he would otherwise have not expended.[3]

---

[3]     Defendants argue that if the Court recognizes that Plaintiff has standing, it might open the door to an avalanche of litigation brought by unsuccessful political candidates.  (*See* Def. Br. 12-13).  This argument rests on Defendants' narrow framing of Plaintiff's claims.  The Court does not construe Plaintiff to be asserting his failure to secure the 2016 Democratic Party presidential nomination as an injury in fact, and therefore it does not analyze whether he would have standing to bring any such claim.  As noted below, the Court discerns Plaintiff to plead a claim for either breach of contract or promissory estoppel, and approaches the standing analysis accordingly.

**B.      Plaintiff Has Failed to State a Claim on Which Relief Can Be Granted**

     **1.      Applicable Law**[4]

"[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall* v. *Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). Accordingly, "the plaintiff's failure to respond to a Rule 12(b)(6) motion does not [itself] warrant dismissal," and the district court must determine whether dismissal of the complaint is appropriate on the merits. *Id.* at 323.

Dismissal under Rule 12(b)(6) is proper when a complaint lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). "In deciding an unopposed motion to dismiss, a court is to assume the truth of a pleading's factual allegations and test only its legal sufficiency." *Haas* v. *Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (alteration and internal quotation marks omitted) (quoting *McCall*, 232 F.3d at 322); *see Blanc* v. *Cap. One Bank*, No. 13 Civ. 7209 (NSR), 2015 WL 3919409, at *2-3 (S.D.N.Y.

---

[4]      Because subject matter jurisdiction in this case is based upon diversity of citizenship (*see* Hr'g Tr. 5:23-6:1), the Court applies the choice of law rules of the forum state. *See Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New York choice of law rules mandate application of the substantive law of the state with the most significant relationship to the legal issue. *See, e.g., Skaff* v. *Progress Int'l, LLC*, No. 12 Civ. 9045 (KPF), 2014 WL 5454825, at *8 (S.D.N.Y. Oct. 28, 2014) (quoting *Intercontinental Plan., Ltd.* v. *Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969)). Defendants' briefing indicates their belief that New York law applies in this case (*see* Def. Br. 9-10), and the Court agrees, given that Plaintiff is a resident of New York, alleges that he is a registered member of the Democratic Party in New York (SAC ¶¶ 2, 8), and therefore presumably suffered injury in New York.

June 24, 2015).  "A document filed *pro se*," like the complaint here, "is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin* v. *KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (Sotomayor, J.) (quoting *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).  Nonetheless, even a *pro se* complaint must contain "factual allegations sufficient to raise a right to relief above the speculative level," including "an allegation regarding [each] element necessary to obtain relief."  *Blanc*, 2015 WL 3919409, at *2 (internal quotation marks and citations omitted).

### 2.   Analysis

Plaintiff's SAC asserts a single claim; however, Plaintiff does not specify the legal authority pursuant to which he believes he is entitled to relief.  (*See* SAC ¶¶ 18-26).  After carefully reviewing the SAC and the transcript of the January 31, 2020 conference — at which conference Plaintiff elaborated on his theory of liability — the Court liberally construes the SAC to state two principal claims: (i) breach of contract and (ii) promissory estoppel.  (*See* Hr'g Tr. 9:23-12:3).[5]  As it happens, however, Plaintiff fails to state a claim under either of these theories of liability, and therefore the SAC must be dismissed in its entirety.

---

[5]   In the SAC, Plaintiff repeatedly refers to Defendants' misconduct as a "conspiracy." (SAC ¶¶ 19-20).  However, under New York law, "[t]o state a claim for civil conspiracy, 'the plaintiff must allege a [i] cognizable tort, coupled with [ii] an agreement between the conspirators regarding the tort, and [iii] an overt action in furtherance of the agreement.'"  *ExpertConnect, LLC* v. *Fowler*, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, at *8 (S.D.N.Y. July 10, 2019) (quoting *Faulkner* v. *Yonkers*, 963 N.Y.S. 2d 340, 341 (2d Dep't 2013)).  Here, Plaintiff has not alleged that any Defendant committed a tort against him, and thus any claim for civil conspiracy must be dismissed.

"Under New York law, the elements of a claim for breach of contract are '[i] the existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [iv] damages.'" *Abraham* v. *Leigh*, 471 F. Supp. 3d 540, 556 (S.D.N.Y. 2020) (quoting *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996)), *reconsideration denied*, No. 17 Civ. 5429 (KPF), 2020 WL 5095655 (S.D.N.Y. Aug. 28, 2020).  And to state a claim for promissory estoppel under New York law, Plaintiff must allege: "[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the promise; and [iii] injury caused by the reliance[.]"  *Murray Eng'g P.C.* v. *Remke*, No. 17 Civ. 6267 (KPF), 2018 WL 3773991, at *13 (S.D.N.Y. Aug. 9, 2018) (quoting *Castellotti* v. *Free*, 27 N.Y.S.3d 507, 513 (1st Dep't 2016)).  "'A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel'; the alleged promise must be clear and unambiguous." *Kilgore* v. *Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015) (quoting *Bd. of Trs. ex rel. Gen. Ret. Sys. of Detroit* v. *BNY Mellon, N.A.*, No. 11 Civ. 6345 (RJS), 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012)).

Here, Plaintiff alleges that the DNC "declared publicly and promised to remain neutral," but then broke its promise when it failed to "provide Plaintiff with the same support accorded to all other candidates." (SAC ¶ 22).[6]  As an

---

[6]     The Statute of Frauds almost certainly applies to the alleged oral agreement or promise as described in the SAC because "the Statute of Frauds renders unenforceable unwritten agreements that are impossible, by their own terms, to complete within one year of their creation."  *Andrews* v. *Sony/ATV Music Publ'g, LLC*, No. 15 Civ. 7544 (AJN), 2017 WL 770614, at *6 (S.D.N.Y. Feb. 24, 2017); *see also* N.Y. Gen. Oblig. Law § 5-701(a)(1).  However, because the SAC is not entirely clear as to the date of the DNC's purported promise(s) or the timeline of Plaintiff's alleged reliance on or agreement to the

initial matter, Plaintiff fails to allege that any of the Individual Defendants made any promise or entered into any agreement with Plaintiff.  (*See generally* SAC; *see also* Hr'g Tr.).  Accordingly, because the existence of a promise or agreement of some kind is an element of both a breach of contract claim and a claim for promissory estoppel, the Court dismisses Plaintiff's complaint as to all three Individual Defendants.  Additionally, Plaintiff provides nothing more than a conclusory allegation that the DNC made any promise or that an agreement existed at all.  As Defendants explain, Plaintiff failed "to articulate the contours of the alleged promise" (Def. Br. 11), and he provides none of the basic information required to establish the existence of any purported promise, much less a valid, binding agreement.  *Accord Bice* v. *Robb*, 511 F. App'x 108, 109 (2d Cir. 2013) (summary order) (holding that oral promise to "take care of the family" is "far too indefinite and vague to be enforced" under New York law). Furthermore, Plaintiff fails to plead that there was any meeting of the minds or that he performed under the purported oral contract.  Thus, Plaintiff fails to plead the existence of the first two elements of a breach of contract claim.  For the same reason, Plaintiff fails to plead the existence of the first element of a promissory estoppel claim.[7]  *Accord Bd. of Managers of Trump Tower at City Ctr. Condo. ex rel. Neiditch* v. *Palazzolo*, 346 F. Supp. 3d 432, 470 (S.D.N.Y. 2018) (finding that promise that "did not set the parameters" of a relationship

---

DNC's promise, the Court cannot definitively say that Plaintiff's claim is barred by the Statute of Frauds.

[7]     On the record on January 31, 2020, Plaintiff explained that he "relied" on the DNC's purported promise by "register[ing] as a federally recognized candidate" and being "actively involved in campaigning during the 2016 campaign."  (Hr'g Tr. 10:23-12:2).

between parties to purported agreement was insufficiently "clear and unambiguous" to support claim for promissory estoppel). Therefore, the Court must also dismiss Plaintiff's claim as to the DNC.

## C.    Leave to Amend Is Denied

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)).  Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Nonetheless, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)).[8]

Plaintiff has twice amended his complaint after receiving pre-motion letters from Defendants, has had the benefit of a conference with the Court at which he discussed his theory of liability, and has still failed to adequately state a claim for which relief can be granted.  *Cf. Nat'l Credit Union Admin. Bd.* v. *U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he

---

[8]    Similarly, the Court recognizes that while a *pro se* complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo* v. *City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (alterations and citation omitted), leave to replead need not be granted where — as here — it would be "futile," *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration, footnote, and internal quotation marks omitted)); *Binn* v. *Bernstein*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) ("To grant Plaintiffs leave to amend would be allowing them a 'third bite at the apple,' which courts in this district routinely deny." (collecting cases)), *report and recommendation adopted*, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020)).

Furthermore, Plaintiff has essentially ceased prosecution of this case. After filing the SAC more than one year ago, Plaintiff has not corresponded with Court, already requiring the Court to dismiss one Defendant for failure to prosecute (*see* Dkt. #50), causing the Court *sua sponte* to extend Plaintiff's deadline to oppose the instant motion (*see* Dkt. #54), and necessitating that the Court consider the pending motion to dismiss to be unopposed. Accordingly, given the history of this case, the Court determines that leave to amend would be futile.

**CONCLUSION**

For the reasons set forth in this Opinion, Defendants' motion to dismiss is GRANTED with prejudice.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is directed to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated:   February 22, 2021
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge